**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

TOM'S OF MAINE,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )   Docket no. 07-cv-73-P-S
                                             )
ACME-HARDESTY CO. &                          )
OHMTEMP INTERNATIONAL, INC.                  )
                                             )
                    Defendant.               )


**ORDER ON MOTIONS TO DISMISS FOR LACK**
**OF PERSONAL JURISDICTION**


Before the Court are the following motions to dismiss:  (1) Akzo Nobel Industries SDN

BHD, Akzo Nobel Oleochemicals SDN BHD, and Pacific Oleo Industries SDN BHD's Motion

to Dismiss for Lack of Personal Jurisdiction (Docket # 35), (2) Motion to Dismiss Amended

Third-Party Complaint Against Defendants Akzo Nobel, Inc., Akzo Nobel Chemicals, Inc. and

Akzo Nobel Surface Chemistry, LLC for Lack of Personal Jurisdiction (Docket # 37), (3) Motion

of Akzo Nobel N.V. & Akzo Nobel Chemicals International BV to Dismiss for Lack of Personal

Jurisdiction (Docket # 48) and (4) Motion to Dismiss Amended Third-Party Complaint Against

Van Leer Malaysia SDN BHD, Van Leer Packaging SDN BHD, Van Leer Packaging SDN

BHD. (East Coast) and Grief, Inc. for Lack of Personal Jurisdiction (Docket # 63).

In short, these four motions require the Court to examine its ability to exercise personal

jurisdiction as to eleven third party defendants and thereby decide whether the Amended Third

Party Complaint pressed by Acme-Hardesty may proceed in this Court.  For the reasons

explained below, the Court ultimately determines that it may exercise personal jurisdiction over

just three of the third party defendants and dismisses the claims against eight third party defendants for lack of jurisdiction.

## I.  STANDARD OF REVIEW

It is the plaintiff's burden to prove that personal jurisdiction exists in a given forum. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  However, a court's determination of personal jurisdiction often involves "more art than science."  Donatelli v. National Hockey League, 893 F.2d 459, 468 n.7 (1st Cir. 1990) (quoted in United States v. Swiss American Bank, Ltd., 274 F.3d 610, 617 (1st Cir. 2001)).  There are essentially two bases for exercising personal jurisdiction:  general jurisdiction or specific jurisdiction.  The "more stringent" test for general jurisdiction requires the Court to find that "the defendant has . . . engaged in continuous and systematic activity in the forum" and therefore may be haled into court within the forum even if "the litigation is not directly founded on the defendant's forum-based contacts."  Harlow v. Children's Hosp., 432 F.3d 50, 64 (1st Cir. 2005) (quoting United Elec. Radio & Mach. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

Unlike general jurisdiction, which is "dispute blind," specific jurisdiction may be invoked when the cause of action arises out of the defendant's contacts with a particular forum.  Wright & Miller, 4 Federal Practice & Procedure § 1067.5 (quoting Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 339 (5th Cir. 1999)).  The First Circuit has delineated three general requirements to be considered when determining whether the exercise of specific personal jurisdiction is appropriate:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389 (citations omitted).  The Gestalt factors include:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. at 1394.  Even if the first two requirements of relatedness and purposeful availment are met, the Court's additional consideration of the Gestalt factors gives the Court an opportunity to consider whether exercise of personal jurisdiction is truly reasonable and would achieve substantial justice.

Applying this three-factor approach, this Court has previously held that placement of a product in the stream of commerce with awareness that it would likely reach Maine does not establish specific personal jurisdiction since it cannot satisfy the second factor of purposeful availment.  See Amburgey v. Atomic Ski USA, Inc., 2:06-cv-149-GZS, 2007 WL 1464380 at *3 (D. Me. May 17, 2007).

In this case, the Court applies the "least taxing" prima facie method for examining whether the Third Party Plaintiff has met its burden.  See Phillips v. Prairie Eye Ctr., -- F.3d --, 2008 WL 2375177 at *2 (1st Cir. 2008) (quoting Rodriquez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)).  Under this method,

> the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction.  In order to make a prima facie showing of jurisdiction, the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts.  The court must

3

accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing, and construe them in the light most congenial to the plaintiff's jurisdictional claim.

Id. (internal quotation marks and citations omitted).

## II.    BACKGROUND

The pending action began as a products liability case by Plaintiff Tom's of Maine ("Tom's") arising out of a fire at a Tom's warehouse in 2004.  Tom's alleges the fire erupted after an employee attempted to warm a drum of capric acid in a drum heater.  As the capric acid was warmed and liquefied, it allegedly leaked onto the drum heater via small puncture holes in the steel drum.  It is further alleged that these holes in the drum were drilled from the inside out. If true, this allegation would mean that the holes were drilled in the drum prior to it ever being filled with capric acid.  Tom's sued Ohmtemp International, Inc., the manufacturer of the drum heater, and Acme-Hardesty Company ("Acme"), the distributor that sold Tom's the drum of capric acid.

Acme is the largest independent oleochemical distributor in the United States.  Since it acts solely as a distributor of products it purchases in finished condition, Acme did not actually manufacture the allegedly defective drum of capric acid.  Thus, by way of a third-party complaint, Acme seeks contribution from the entities that manufactured both the capric acid and the steel drum.

Acme purchased the drum of capric acid in Malaysia in December 2002 from an entity known as Akzo Nobel Industries SDN BHD.  Although Akzo Nobel Industries SDN BHD manufactured the capric acid and packaged it into the drum, it did not manufacture the allegedly defective steel drum.  Rather, Akzo Nobel Industries SDN BHD purchased the drum from Van Leer Malaysia SDN BHD in 2002.

4

Acme's Amended Third Party Complaint (Docket # 24) does not limit its claims for contribution to Akzo Nobel Industries SDN BHD and Van Leer Malaysia SDN BHD.  Rather, in an effort to assure that it can actually obtain contribution, Acme's Amended Third Party Complaint names nine additional companies based on their corporate relationships with the two Malaysian-based companies involved in the manufacture of the drum of capric acid.

The Court previously denied Acme's request to take jurisdictional discovery.[1]  (See Feb. 15, 2008 Mem of Dec. (Docket # 75) & March 17, 2008 Endorsement Order Denying Appeal (Docket # 80).)  Thus, the Court is now faced with the challenge of untangling two corporate webs, Akzo Nobel and Grief, Inc., and determining if any of the named Akzo Nobel or Grief entities has the necessary minimum contacts with Maine to be part of this litigation.

## III.   DISCUSSION

In its Third-Party Plaintiff role, Acme-Hardesty, attempts to bring before this Court eleven various entities allegedly involved in manufacturing the capric acid and the drum.  To the extent that some of these entities can be considered jointly because of their relationships and/or similar standing, the Court's discussion will address these "groups" rather than engaging in repetitive analysis.

### A.  The Malaysian Akzo Nobel Entities:  Akzo Nobel Industries SDN BHD, Akzo Nobel Oleochemicals SDN BHD and Pacific Oleo Industries SDN BHD (together, "Pacific")

Akzo Nobel Industries SDN BHD, Akzo Nobel Oleochemicals SDN BHD and Pacific Oleo Industries SDN BHD filed a joint challenge to personal jurisdiction claiming to be

---

[1] It is worth noting that Acme's request for jurisdictional discovery relied solely on establishing specific personal jurisdiction as to all named third party defendants.  In connection with some of the pending motions to dismiss, Acme now argues for general personal jurisdiction.

Malaysian-based companies with no Maine contacts.  It is undisputed that Akzo Nobel Industries

SDN BHD was the source of the capric acid drum at issue, which was sold to Acme in December

2002. (See Exs. K-M (Docket #s 83-32 – 83-34).)  Pacific Oleo Industries SDN BHD came into

existence some time in 2005 or 2006 as a result of Akzo Nobel Industries SDN BHD changing

its name.  Thus, if Acme were to make a similar purchase of capric acid drums today, the named

supplier would be Pacific Oleo Industries SDN BHD.  To the extent that the Amended Third

Party Complaint also separately names a third Malaysian-based entity, Akzo Nobel

Oleochemicals SDN BHD, as a defendant, the parties appear to now agree that Akzo Nobel

Oleochemicals SDN BHD does not and has not existed as an entity separate and apart from Akzo

Nobel Industries SDN BHD.  (See Third Pty Defs.' Mot. to Dismiss (Docket # 35) at 1 n.1 and

Acme's Response at 2 n.1.)  In short, for purposes of personal jurisdiction in this case, the Court

considers these three separately named third-party defendants as the same entity and refers to all

three entities as "Pacific" for ease of reference.

    The Court's personal jurisdiction analysis is limited to specific jurisdiction since Acme

does not argue that these Malaysian-based companies have engaged in continuous and systematic

activity in Maine.  The Court acknowledges that the claim here at issue arises directly out of

Pacific supplying capric acid to Acme that was later sold to Tom's.  This provides a basis for

finding the necessary relatedness element of specific personal jurisdiction.  However, the

exercise of personal jurisdiction over Pacific runs into insurmountable obstacles once purposeful

availment and the Gestalt factors are considered.  In this case, there is no evidence that Pacific

has conducted business in Maine or invoked the benefits and protections of Maine law.  Rather,

the record establishes only that it sold capric acid to Acme in Malaysia and Acme then arranged

for the shipment of the purchased products to warehouses in the United States.  (There is no

evidence that any of these warehouses are actually located in Maine.)  The drums of capric acid

at issue in this case were actually received and stored by Acme at a warehouse in Bensalem,

Pennsylvania.  Approximately one year later, Acme received an order for seven drums of capric

acid from Tom's and shipped the requested number of drums to the Tom's warehouse in Maine.

In short, Plaintiff has not made a prima facie showing that the Pacific entities purposely availed

themselves of the Maine forum at any time.  The complete absence of such proof also leads the

Court to conclude that exercising jurisdiction over these Malaysian-based entities would be

unreasonable and not achieve substantial justice under the Gestalt factors.[2]

For this reason, the Court will dismiss claims against Pacific for lack of personal

jurisdiction.

**B. The Malaysian Grief Entities:   Van Leer Malaysia SDN BHD, Van Leer**

**Packaging SDN BHD & Van Leer Packaging SDN BHD (East Coast)**

Acme's attempt to haul the Malaysian-based entities involved in the manufacture of the

allegedly defective steel drum into a Maine court suffers similar problems.  Given the Court's

inability to find a basis for exercising personal jurisdiction over the company that sold the drum

of capric acid to Acme in Malaysia, it is not surprising that the Court cannot find a basis for

exercising specific personal jurisdiction over a Malaysian-based drum manufacturer that is one

step further removed from Maine and the fire that serves as the basis for this litigation.

The Court begins with a similar clarification regarding three Grief entities named in the

Acme Third-Party Complaint.  Based on the evidence submitted in connection with the pending

motions, it is now clear that Van Leer Packaging SDN BHD and Van Leer Packaging SDN BHD

---

[2] The Court's conclusion in this regard is further bolstered by the evidence suggesting when Akzo Nobel Industries SDN BHD was sold to Lam Soon, Akzo Nobel Chemicals International BV actually retained any claims for the 2004 Tom's warehouse fire.  (See Mawhinney Aff. (Docket # 83-40) ¶9.)  Thus, it does not appear that the ability to exercise jurisdiction over Pacific in this forum will affect Acme's ability to collect should it be determined that Akzo Nobel has some liability for the damage caused by the fire.

(East Coast) are both companies with no Maine contacts.  In addition, both of these entities have been dormant since 1998 and, thus, had no involvement in or responsibility for the manufacture of the drums sold to Akzo Nobel in 2002.  Under these circumstances, there is no basis for personal jurisdiction over either entity.  It does not appear that Acme opposes the dismissal of these two parties in light of the evidence submitted that these companies are and have been inactive.  (See Acme Response (Docket # 86) at 8 n.16.)

The entity that remains is Van Leer Malaysia SDN BHD.  In connection with the pending motion, the Court has been advised that the name of this company was changed to Grief Malaysia SDN BHD ("Grief Malaysia") in 2003.  Assuming for the moment that the relatedness prong of the jurisdictional inquiry could be satisfied by the mere fact that Grief Malaysia manufactured a drum that made its way through the stream of commerce to Maine and then caused damaged in Maine, the basis for personal jurisdiction over Grief Malaysia is still lacking. In short, Grief Malaysia's contacts with Maine and purposeful availment of the Maine market are even less than Akzo Nobel Industries SDN BHD.

Thus, the Court will dismiss all claims against Van Leer Malaysia SDN BHD (now known as Grief Malaysia SDN BHD) as well as Van Leer Packaging SDN BHD and Van Leer Packaging SDN BHD (East Coast) for lack of personal jurisdiction.

### C.  Grief, Inc.

Grief, Inc. is a Delaware corporation with its corporate headquarters in Ohio.  Grief, Inc. does not have offices or property in Maine, nor does it have employees based in Maine.  From 2002-2006, Grief, Inc. has sold some industrial packaging products in Maine with those Maine sales constituting less than 0.11 percent of Grief's sales of industrial packaging in the United

8

States.  Grief, Inc. has no record of selling any steel drums in Maine.  Grief, Inc. does not have any contracts with companies for the delivery of industrial products in Maine.

Based on this record, it is clear that Grief Inc. does not engage in continuous systematic activity in Maine.  In short, there is no basis for general jurisdiction over Grief, Inc.

Turning to specific personal jurisdiction, Grief, Inc.'s connection to this case allegedly lies in its relationship as the parent corporation of Van Leer Malaysia SDN BHD (now known as Grief Malaysia SDN BHD).  Quite simply, this attenuated corporate relationship does not satisfy the relatedness requirement for specific jurisdiction.  Moreover, Acme essentially relies on two facts to establish purposeful availment: (1) Grief, Inc. applied to reserve its name with Maine authorities since 2003 (after the sale of the allegedly defective drum) and (2) Grief, Inc. has an East Coast sales representative who would handle sales in Maine.  This showing falls short of establishing purposeful availment.

Therefore, the Court finds no basis for exercising personal jurisdiction over Grief, Inc. on the proffered record.

### D. The Dutch Akzo Nobel Companies:  Akzo Nobel NV & Akzo Nobel Chemicals International BV

The Court next returns its attention to Akzo Nobel focusing its personal jurisdiction lense on two Akzo Nobel companies headquartered in the Netherlands.  Akzo Nobel NV is the parent corporation and its shares are publicly traded on the Amsterdam Stock Exchange.

Akzo Nobel Chemicals International BV is a holding company that owns interests in more than 60 companies.  The company held a 65 percent share of Akzo Nobel Industries SDN BHD (now known as Pacific Oleo Industries SDN BHD) at the time that the allegedly defective capric acid drum was sold to Acme.

Neither of these Dutch Akzo Nobel companies has ever been licensed to do business in Maine or maintained any property or presence in Maine.  Likewise, the record does not suggest that either of these Dutch companies has directly participated in any sales or contracts in Maine or specifically directed advertising at potential customers in Maine.  In short, there is no evidence of continuous and systematic contact with Maine that would support a finding of general jurisdiction.

The Court is left to consider the possibility of specific jurisdiction.  With respect to Akzo Nobel NV and Akzo Nobel Chemicals International BV, Acme has presented nothing by way of evidence or argument that justifies treating these foreign parent holding companies any differently than the Court treated Amer Sports, the Finnish-based parent company at issue in Amburgey v. Atomic Ski, Inc., 2007 WL 1464380 at *5-*8 (D. Me. May 17, 2007).  As was the case with Amer Sports, the Court finds the relatedness of these two Dutch companies is limited to the fact that one or more of its subsidiaries manufactured and arranged for the sale of the allegedly defective product. (More accurately, Akzo Nobel NV actually acts as the parent company for various subsidiaries (including Akzo Nobel Chemicals International BV), which, in turn, owned smaller subsidiaries that manufactured and arranged for the sales of the capric acid barrel at issue.)  Such an "attenuated and indirect" contact is simply not sufficient to satisfy the relatedness and purposeful availment requirements for specific personal jurisdiction.  Id. at *6.  Moreover, to the extent that Acme argues that the Court should impute any and all contacts of the named Akzo Nobel subsidiaries to these two Dutch parent companies, the Court concludes that there is no evidence that warrants disregarding the separate nature of these corporate entities.  See id. at *6.

One additional evidentiary wrinkle with respect to Akzo Nobel Chemicals International BV appears in the record:  Akzo Nobel Chemicals International BV, along with its insurer, Zurich, retained claims related to the Tom's fire when it sold its interest in Akzo Nobel Industries SDN BHD.   (See Mawhinney Aff. ¶9 & Ex. S2 (Docket # 83-40 & 83-41.) Ultimately, this might allow the Court to exercise specific personal jurisdiction over Akzo Nobel Chemicals BV if it had found a basis for exercising personal jurisdiction over Akzo Nobel Industries SDN BHD.   However, the Court has already concluded that it cannot exercise jurisdiction over this Malaysian-based company.  Thus, the Court does not believe that Akzo Nobel Chemicals International BV's retention of the Tom's claim provides a basis for exercising personal jurisdiction here in Maine.

**E.     The U.S.-based Akzo Nobel Entities:   Akzo Nobel, Inc., Akzo Nobel Chemicals, Inc., and Akzo Nobel Surface Chemistry, LLC**

There are three Akzo Nobel entities named in the Third Party Complaint that are based in the United States:  Akzo Nobel, Inc., Akzo Nobel Chemicals, Inc., and Akzo Nobel Surface Chemistry, LLC (together "Akzo Nobel U.S.").

Akzo Nobel Surface Chemistry LLC[3] ("Akzo Surface") is a Delaware limited liability corporation with a principal place of business in Chicago, Illinois.  It is a wholly owned subsidiary of Akzo Nobel Chemicals, Inc.  Akzo Surface maintains a passive website meaning one cannot order any products via the website.  According to the company website, Akzo Surface also maintains two other offices located in McCook, Illinois and Morris, Illinois.  The company does not maintain any business operations or property in Maine.  In 2005-2006, Akzo

---

[3] In its Motion to Dismiss, Akzo Nobel Surface Chemistry LLC is also referred to as Akzo Nobel Surface Chemistry Inc. (Motion to Dismiss (Docket # 5) at 5.) and as Akzo Nobel Surface Chemicals, LLC (Rauen Aff. (Docket # 37-2).).  The Court has read these references as referring to Third Party Defendant Akzo Nobel Surface Chemistry LLC.

Surface had one direct customer in Maine; that customer, Downeast Emulsions, ordered a single product (Kling Beta 101-AP) from a sales representative located in Illinois.  The sales to Downeast Emulsions account for less than one-tenth of one percent of Akzo Surface's totals sales.

Akzo Nobel Chemicals, Inc. ("Akzo Chemicals"), the parent company of Akzo Surface, is incorporated as a C-corporation in Delaware with a principal place of business in Chicago, Illinois.  According to the Akzo Nobel website, it also maintains offices in Dobbs Ferry, New York.  It is a wholly owned subsidiary of Akzo Nobel, Inc.  The company does not currently maintain any business operations or property in Maine.  Akzo Chemicals was licensed to do business in Maine from 1990 until March 15, 2004.  According to its 2003 Annual Report, Akzo Chemicals was engaged in "sales and sales solicitation" in Maine during that time.[4]  (See Ex. D5 (Document # 83-21).)  It filed its last State of Maine income tax return in 2004.  During the time it was licensed to do business in Maine, Akzo Chemicals appeared before this Court as the named defendant in an employment action brought by a Maine resident, who was allegedly employed by the company from 1990 through January 1997.  See Hart v. Akzo Nobel Chemicals, Inc., 1:99-cv-126-GC.  This action was removed from Maine state court in May 1999 and ultimately ended with a settlement before trial in June 2000.

Akzo Nobel, Inc., the parent company of Akzo Chemicals, is also incorporated as a C-corporation in Delaware with a principal place of business in Chicago, Illinois.  Akzo Nobel NV is the parent company of Akzo Nobel, Inc.  The company does not maintain any business operations or property in Maine.  In connection with its motion to dismiss, Akzo Nobel Inc.

---

[4] This finding is made in accordance with the applicable prima facie standard of proof and despite the fact that an affidavit submitted by Akzo in connection with the pending motion indicates that Akzo Chemicals, "does not sell products" and "is not involved in the distribution of products" and, thus, has not sold or distributed any products in Maine over the last five years.  (Scudder Aff. (Docket # 37-3) ¶¶ 14 & 17.)

represents that it "does not sell products" and "is not involved in the distribution of products" and, thus, has not sold or distributed any products in Maine over the last five years. (Curtis Aff. (Docket # 37-4) ¶¶ 13 & 16.)

Both Akzo Nobel, Inc. and Akzo Nobel Chemicals Inc. are registered with the Illinois Secretary of State. In those registrations, both companies list the same name and address for the secretary of each company. Although they list different presidents, both registrations list the same address for the company president as well as the same agent and agent address. (See Ex. C-3 (Docket # 83-7).)[5]

During the time period at issue in this case, Acme's primary contact for the purchase of Akzo Nobel products was Haidi Wang, a product manager, who worked for Akzo Surface and was based in Chicago. (See Ex. H (Docket # 83-25).) Ms. Wang frequently directed Acme purchases, decided whether those purchases would come from Akzo Nobel plants in Malaysia or Germany and set prices for Acme's purchases. Acme also had contact with Akzo Nobel representatives, Thom Stephens and Niek Stapel.[6] Acme representatives met with these three individuals repeatedly at various locations in the United States. In 2003, Ms. Wang and Mr. Stephens approached Acme about a distribution project under which Acme would become solely responsible for distributing Akzo Nobel products to all of Akzo Nobel's "smaller" customers throughout the United States. These smaller customers were so-called LTL (less than a truckload) customers. According to the LTL customer list Wang provided Acme, Akzo Nobel already had LTL customers in 26 states, including Massachusetts, Rhode Island, New Hampshire

---

[5] Exhibit C-3 (Docket # 83-7) also provides registrations for Akzo Services, Inc and Akzo Nobel Coatings, Inc. with the same overlap in addresses, agents and secretaries.

[6] While the record is not clear as to which Akzo Nobel company Stephens and Stapel worked for during all times relevant to this case, it is clear that at various times both worked for Akzo Nobel companies other than Akzo Surface.

and Connecticut.   Under this distribution arrangement, Akzo Nobel and Acme did share customer information in addition to Acme providing regular updates on its customer base. Pursuant to this distribution arrangement and its other conversations with Acme, Akzo Nobel knew or should have known that Acme was distributing its products throughout the United States, including in Maine.

Overall, from the perspective of Acme, Akzo Nobel was an integrated multi-national company.  In its dealings with Akzo Nobel, Acme dealt primarily with Akzo Nobel employees based in Chicago and believed the Chicago office to be the market agent for all U.S. sales of Akzo Nobel products.  Correspondence and promotional materials received by Acme did not distinguish between the U.S.-based Akzo Nobel companies.  Moreover, Haidi Wang handled any product or shipment problems and generally acted as a liaison between Acme and the Akzo Nobel plants in Malaysia and Germany.  In its dealings with Akzo Nobel U.S., Acme witnessed individuals, including Wang, move between various Akzo Nobel "divisions" and noted that the supervisors for an individual Akzo Nobel employee were frequently employed in different "divisions."  Even with respect to the investigation of the Tom's fire and the conversations between counsel in this case, the record is replete with references to "Akzo Nobel" with no attempt to regularly distinguish between the various Akzo Nobel companies, except to the extent that they are located in different countries.

On the record presented, the Court believes that the presumption of corporate separateness as to the three named U.S.-based Akzo Nobel companies has been overcome. These companies appear to have significant overlap in operations and personnel, and in their dealings with Acme made no attempt to delineate separate corporate identities.   More specifically, Akzo Surface, the lowest subsidiary on the Akzo Nobel U.S. totem pole, is the only

14

company that the Akzo Nobel U.S. Defendants acknowledge as engaging in sales of Akzo Nobel products. Given the primary role of sales in Akzo Nobel's business model, it is clear that Akzo Surface was dispatched as the "agent for [its] parents," Akzo Chemicals and Akzo Nobel, Inc. Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990). There is no evidence in the record that any of these three companies is undercapitalized, insolvent or bankrupt. Nonetheless, the Court believes that at this point in the litigation an unjust result would occur if the corporate veil were not pierced; namely, all three Akzo Nobel entities might evade personal jurisdiction despite the fact that they collectively satisfy the requirements for personal jurisdiction. See Advanced Const. Corp. v. Pilecki, 901 A.2d 189, 194-95 (Me. 2006) (discussing the requirements under Maine law for piercing the corporate veil).

Having determined that there is a basis for examining the minimum contacts of Akzo Nobel U.S. on a collective basis, the Court turns its attention to analyzing specific jurisdiction. As to relatedness, the claim here—that the Akzo Nobel drum of capric acid was defective—is clearly related to Akzo Nobel's sale and distribution of products in Maine. Admittedly, the record establishes that Akzo Nobel's sale in this case was indirect (through Acme). However, this does not prevent the Court from finding the relatedness prong is satisfied. See Amburgey, 2007 WL at *2 (finding the relatedness prong satisfied by manufacturing a product that reached Maine and caused injury in Maine); Unicomp, Inc. v. Harcros Pigments, Inc., 994 F. Supp. 24, 27 (D. Me. 1998) (selection of distributor that targets forum evinces intent to serve forum). As to purposeful availment, the Court believes that Akzo Nobel U.S. has engaged in voluntary contacts with Maine such that it is reasonably foreseeable that it might be haled into a Maine court. These contacts include being registered in Maine as business engaged in "sales and sales solicitation" for approximately 14 years, including 2003 (the year the drum was purchased by

15

Tom's) and at least a portion of 2004 (the year the fire occurred).[7]   The finding of purposeful

availment is bolstered by the fact that Akzo Chemicals was in fact haled into a Maine Court in

1999 and did not raise personal jurisdiction objections.

In addition, the Court believes that the Gestalt factors weigh in favor of the exercise of

jurisdiction over Akzo Nobel U.S.  There is no evidence that Akzo Nobel U.S. will be burdened

by having to appear in Maine given the national reach of its sales operations.  Allowing Acme's

claims for contribution to proceed in the same case as the underlying products liability claim is

undoubtedly more efficient and effective than having Acme bring its claim as a separate action in

a different forum.  Notably, given the Court's finding as to lack of personal jurisdiction as to

other third party defendants, such a separate action might still be a possibility.  Nonetheless, the

shared interests of all sovereigns are promoted by attempting to bring as many parties as possible

before a single forum when the claim relates to an allegedly defective product that is widely

distributed.  To the extent that damage from this allegedly defective product occurred in Maine

and affected a Maine company, there is no doubt that Maine has a strong interest is adjudicating

this dispute.  In short, the Court is satisfied that exercising personal jurisdiction over Akzo

Nobel, Inc., Akzo Chemicals and Akzo Surface comports with fair play and substantial justice.[8]

---

[7] The Court acknowledges that the alleged fire in this case took place on June 30, 2004. (See Compl. ¶13.)  In connection with the pending motions, the Secretary of Akzo Chemicals indicates that Akzo Chemicals withdrew its licenses to do business in Maine approximately two and a half months prior to that date.  (See Scudder Aff. ¶3.)  It is not clear on the record that the withdrawal immediately ended Akzo Chemical's contact with the forum.  In fact, the company filed a corporate income tax return for 2004.  In any event, the parties have not presented any argument that the date of withdrawal is somehow determinative in the Court's personal jurisdiction analysis.

[8] This conclusion and the analysis leading up to it is not intended to suggest that Acme will ultimately be able to establish liability on any of the claims it presses against Akzo Nobel, Inc., Akzo Chemicals or Akzo Surface.  At this stage in the litigation, it is undoubtedly premature to discuss the liability of any third party defendant.

### F.   Request for Transfer

In its various responses to the pending motions to dismiss for lack of jurisdiction, Acme alternatively suggests that the Court should transfer the case pursuant to 28 U.S.C. § 1631. Whether such a transfer is even feasible to cure a lack of personal jurisdiction is a matter of debate.  See Cimon v. Gaffney, 401 F.3d 1, 7 n.21 (1st Cir. 2005).  Assuming for the moment that a transfer was feasible, the Court does not believe that the interest of justice would be served by a transfer.  Although Acme suggests both Illinois and Pennsylvania as potential viable venues for its third party claims, it is not clear that either of these forums would have a basis for exercising jurisdiction over Tom's products liability claims that serve as the basis for Acme's third party complaint.  In short, Acme's request for transfer is an attempt to put the "third party" cart before the jurisdictional horse.  The Request for Transfer is DENIED.  Of course, this ruling does not prevent Acme from attempting to refile its claims against any party over whom this Court lacks personal jurisdiction in another jurisdiction where minimum contacts might be established.

### III.   CONCLUSION

For the reasons explained herein, the Akzo Nobel Industries SDN BHD, Akzo Nobel Oleochemicals SDN BHD, and Pacific Oleo Industries SDN BHD's Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 35) is GRANTED.  The Motion to Dismiss Amended Third-Party Complaint Against Defendants Akzo Nobel, Inc., Akzo Nobel Chemicals, Inc. and Akzo Nobel Surface Chemistry, LLC for Lack of Personal Jurisdiction (Docket # 37) is DENIED. The Motion of Akzo Nobel N.V. & Akzo Nobel Chemicals International BV to Dismiss for Lack of Personal Jurisdiction (Docket # 48) is GRANTED.  The Motion to Dismiss Amended Third-

Party Complaint Against Van Leer Malaysia SDN BHD., Van Leer Packaging SDN BHD., Van Leer Packaging SDN BHD. (East Coast) and Grief, Inc. for Lack of Personal Jurisdiction (Docket # 63) is GRANTED.

In accordance with these rulings, Acme's claims against Akzo Nobel Industries SDN BHD (currently doing business as Pacific Oleo Industries SDN BHD), Akzo Nobel Oleochemicals SDN BHD, Van Leer Malaysia SDN BHD (currently doing business as Grief Malaysia SDN BHD), Van Leer Packaging SDN BHD, Van Leer Packaging SDN BHD (East Coast), Grief, Inc., Akzo Nobel NV and Akzo Chemicals International BV are hereby DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 16th day of July, 2008.

18